### Curlee v. Hall.
### Same v. Curlee.
Feb. 15, 1944.

Vert C. Fraser and J. C. Cannaday for appellant.

Withers & Lisman for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant in these actions, Nicie Curlee, married G. B. Curlee in the spring of 1940. Mr. Curlee was some 80 years of age at that time. He lived about a year after the marriage. In 1934 Mr. Curlee gave each of his seven children $500. In 1936 he and his then wife entered into a written contract settling their property rights. The wife was given $200 in cash and each party released and relinquished any and all claims which they might have in and to the property of the other. The preamble of the contract follows:

"Whereas, we the undersigned, husband and wife, being old and unable to assist each other, and having no help and being unable to secure the proper attention and being unable to assist each other in sickness and disability, and desiring to settle our marital rights, and property rights, and having mutually agreed and by these presents do agree as follows: * * *." The $200 was paid to the wife as provided in the contract, and she and Mr. Curlee executed a deed to Elda Hall, a son-in-law of Mr. Curlee's, for a house and lot which he owned in Clay. This conveyance is the subject of the attack in the action filed by the appellant against Elda

Hall. Shortly after the deed was executed to Hall, Mr. Curlee gave all of his personal property to a son, Luther Curlee, with the understanding that Luther was to care for his father during the remainder of his life. This transfer is the subject of the action filed by the appellant against Luther Curlee.

Charges of fraud were abandoned, but the appellant insisted in the lower court, and is insisting here, that each of the transactions was in the nature of a trust for the benefit of the donor, and therefore the residue of the personalty and the realty was the property of Mr. Curlee's estate and subject to the claim of his widow. The following quotation from the opinion of the chancellor sets forth both his review of the evidence and his reasons for finding against the appellant:

"Mr. Curlee's wife had gone to Evansville to make her home and Mr. Curlee was doubtless, trying to insure for himself a home and support during his remaining days. He asked Hall and his wife to leave their home and move into the home with him, stating that they would never be sorry if they did, to which request they acceded, whereupon he handed the executed deed to Hall with the remark 'You now own a house and lot in Clay.' The Halls lived with the old gentleman for some 15 or 17 months and then went to Henderson where Elda had found employment. There is no evidence as to whether Mr. Curlee was consulted about this move or as to whether it was or not agreeable to all the parties concerned. At any rate Mr. Curlee was permitted to remain in the home and to collect rents from it during the absence of the Halls, during which time also, he paid the taxes on the property, or Luther did so for him, and also kept the insurance in his name.

"If he intended the deed to be in trust he could well have told his lawyer to so draw it. Or if he intended it to be in consideration of the Halls making a home for him during his life, this could have been likewise inserted as a consideration. He procured the draftsman and had the deed made without any knowledge of it on the part of Hall, and thereafter told all of his children that he had deeded it to Elda Hall. Nothing was said about a trust or condition.

"Some three or four witnesses testify for the plaintiff that Mr. Curlee claimed to own the house at the time

he was contemplating marriage with the plaintiff. One of the witnesses said he said it was a 'fake deed'; another says he told him 'The deed was done away with.' None of these statements are competent evidence, and the last one recited is refuted by the deed itself.

"I do not find anything in the record to induce a belief that the deed was intended to be or was accepted as a deed of trust.

"In 1934, when the other children were given $500.00 each, Luther was given $500.00 in bank stock, as appears from the testimony of Mr. Quirey and the memorandum he filed with his testimony. This made him equal with the others at the time in sharing their father's bounty.

"In 1936, about the time he and his wife settled their property rights, he, Mr. Curlee, by an unrestricted endorsement, assigned to Luther $500.00 in notes against Tom Gibson, who, after that time, with one probable exception, paid the interest on the notes to Luther and finally paid the principal to him. Nothing was ever said to Gibson about the assignment being a conditional one, although on one occasion and in the presence of the plaintiff, he paid the interest to Mr. Curlee, in the absence of Luther, and cautioned Mr. Curlee to be sure to call Luther's attention to it. All of the children, except one, testify that their father told them he had given notes and money to Luther. Again nothing was said about any condition.

"At the time the notes were thus transferred, the balance to his credit in the bank was also transferred to Luther as was a certificate of time deposit for $1500.00. The bank balance at the time was small and if it was shown in evidence I do not remember it. Counsel for plaintiff say he had in bank in 1934 the sum of $1987.00 in all, which was depleted by two years intervening time. So it could not have been very much above the $1500.00 time deposit. Luther, whose evidence was made competent by the plaintiff, says his father gave him the notes and money with the understanding that he was to care for his father during his life. There is no claim that he did not. To the contrary, the record shows that he gave his father by check more than $1300.00 and he estimates that he gave him cash to the amount of $300.00 or $400.00.

"The plaintiff testified that Luther told her after the death of Mr. Curlee (and in this she is corroborated by her affidavit of what an absent witness would state) that there was $1200.00 in money left in the estate.

"Luther denies this and says that he had only one conversation with her relative to the estate, which was had when he was plowing her garden for her, all of which she denies.

"The time certificate and notes were turned over by unrestricted endorsement, and the balance on regular deposit, if any, at the unconditional direction of Mr. Curlee. He had the right, in the absence of fraudulent intent—which is out of the case—to give this property away, even to a stranger, and certainly had the right to purchase with it a decent living for his few remaining years. * * *"

Our review of the record leaves us in full accord with the views of the chancellor. Numerous authorities are cited by the appellant which involve circumstances where a prospective husband conveyed or concealed his property to prevent his wife from having an interest therein. Such conveyances have been set aside, but here the transactions took place while Mr. Curlee was married to his second wife, and, indeed, several years before he even knew the appellant.

As pointed out in Webb v. Webb, 200 Ky. 488, 255 S. W. 137, a constructive trust cannot be established by a mere preponderance of the evidence, but rather must be established by evidence which is clear, definite, unequivocal and satisfactory. Here there was no such proof. Indeed the proof preponderated in favor of the appellees.

Lastly, we fail to see how it can be contended that the gift to Luther was not sufficient. All of the personalty was turned over to him, he took charge of it and managed it, and it was with his consent that his father checked on his bank account. The fact that his father asked him to provide for him, which Luther did, would not make the gift conditional, nor give Mr. Curlee any control of it.

We believe the chancellor properly ruled against the appellant in each action.

Judgment affirmed.